WR-50,961-07    AP-77,054
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 11/19/2015 2:50:19 PM
Accepted 11/19/2015 3:57:12 PM
ABEL ACOSTA
CLERK



Barry C. Scheck, Esq.
Peter J. Neufeld, Esq.
Directors

Maddy deLone, Esq.
Executive Director

Innocence Project
40 Worth Street, Suite 701
New York, NY 10013

Tel 212.364.5340
Fax 212.364.5341

*www.innocenceproject.org*

RECEIVED IN
COURT OF CRIMINAL APPEALS

November 19, 2015

ABEL ACOSTA, CLERK

November 19, 2015

Abel Acosta
Clerk of the Court of Criminal Appeals
201 W. 14th St. Rm. 106
Austin, TX, 78701

> **Re:    EX PARTE RODNEY REED, Writ Cause No. WR-50,961-07**
> **RODNEY REED v. STATE OF TEXAS, Appeal No. AP-77,054**

Dear Mr. Acosta:

Please find attached to this electronic filing an **ADVISORY REGARDING POTENTIAL ERRORS IN THE TEXAS DEPARTMENT OF PUBLIC SAFETY'S DNA ANALYSIS** along with the attached exhibits. Mr. Reed currently has pending before the court an appeal pursuant to Chapter 64 of the Code of Criminal Procedure as well an application for a Writ of Habeas Corpus pursuant to Article 11.071 of the Code of Criminal Procedure. The enclosed advisory should be filed into both cases. If you have any questions or concerns please do not hesitate to contact me at 212-364-5980. Thank you very much.

Sincerely.

/s/ Bryce Benjet_____
Bryce Benjet
Staff Attorney

CC:    Matthew Ottoway, Assistant Attorney General
Bastrop District Attorney's Office

Benjamin N. Cardozo School of Law, Yeshiva University

**IN THE
COURT OF CRIMINAL APPEALS
AT AUSTIN, TEXAS**

| | | |
|---|---|---|
| EX PARTE | § | |
| | § | Writ Cause No. WR-50,961-07 |
| RODNEY REED, | § | |
| | § | Trial Cause No. 8701 |
| Applicant. | § | |

_____

**IN THE
COURT OF CRIMINAL APPEALS
AT AUSTIN, TEXAS**

| | | |
|---|---|---|
| RODNEY REED, | § | |
| Appellant, | § | |
| | § | Appeal No. AP-77,054 |
| v. | § | |
| | § | Trial Cause No. 8701 |
| STATE OF TEXAS, | § | |
| Appellee. | § | |

_____

**ADVISORY REGARDING POTENTIAL ERRORS IN THE
TEXAS DEPARTMENT OF PUBLIC SAFETY'S DNA ANALYSIS**
_____

TO THE HONORABLE JUDGES OF THE TEXAS COURT OF CRIMINAL
APPEALS:

Rodney Reed files this advisory to inform the Court of notices provided by

the Office of the Attorney General, the Texas Department of Public Safety (DPS),

and the Texas Forensic Science Commission (FSC) that the DNA results reported

in Mr. Reed's case may be in error. Specifically, the Office of the Attorney

General has forwarded notices from DPS and FSC indicating that Mr. Reed's case

may have been affected by errors identified in both statistical databases relied on by DPS as well as the manner in which DPS analyzed DNA mixtures. These notices are attached as Exhibit 1. In response to this information, Mr. Reed has asked DPS to review its work in the case, correct any errors, and provide the materials necessary to evaluate DPS's review. A copy of this request is enclosed as Exhibit 2.

Mr. Reed currently has pending before the Court an appeal pursuant to Chapter 64 of the Code of Criminal Procedure as well an application for a Writ of Habeas Corpus pursuant to Article 11.071 of the Code of Criminal Procedure. Because these proceedings involve a review of the record, any error in the DNA analysis reported by DPS and introduced into the record has the potential to materially affect this Court's determination of Mr. Reed's case.

Undersigned counsel will keep the Court apprised of this matter as it progresses.

Respectfully submitted,

/s/ Bryce Benjet_____
BRYCE BENJET
State Bar No. 24006829
THE INNOCENCE PROJECT
40 Worth St. Suite 701
New York, New York 10013
(212) 364-5340
(212) 364-5341 (fax)

ANDREW F. MACRAE
State Bar No. 00784510
LEVATINO|PACE LLP
1101 S. Capital of Texas Highway
Building K, Suite 125
Austin, Texas 78746
(512) 637-8563
(512) 637-1583 (fax)

*Attorneys for Applicant Rodney Reed*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Advisory has been e-filed and electronically served on the attorneys for the State on this 19th day of November 2015:

Matthew Ottoway                Bryan Goertz
Assistant Attorney General     Bastrop District Attorney
300 W. 15th Street             804 Pecan St.
Austin, Texas 78701            Bastrop, Texas 78602

/s/ Bryce Benjet_____
Bryce Benjet

# EXHIBIT 1



# KEN PAXTON

ATTORNEY GENERAL OF TEXAS

July 22, 2015

Bryce Benjet
INNOCENCE PROJECT
40 Worth Street, Suite 701
New York, New York 10013

   Re: *State v. Reed*, No. 8701

Dear Bryce:

  Enclosed is a notice regarding DNA testing from the Texas Department of Public Safety.

        Regards,

        Matthew Ottoway
        Assistant Attorney General
        Assistant District Attorney
        Bastrop County, Texas

# TEXAS DEPARTMENT OF PUBLIC SAFETY

**5805 N LAMAR BLVD • BOX 4087 • AUSTIN, TEXAS 78773-0001**
**512/424-2000**
www.dps.texas.gov

STEVEN C. McCRAW
DIRECTOR
DAVID G. BAKER
ROBERT J. BODISCH, SR.
DEPUTY DIRECTORS

COMMISSION
A. CYNTHIA LEON, CHAIR
MANNY FLORES
FAITH JOHNSON
STEVEN P. MACH
RANDY WATSON



June 30, 2015

The Texas Department of Public Safety Crime Laboratory system was informed by the Federal Bureau of Investigation in May 2015 of errors in the FBI-developed population database. This database has been used by the Texas DPS Crime Laboratory system as well as many other crime laboratories across the country for calculating match statistics in criminal investigations and other types of human identification applications since 1999.

Upon notification, the forensic DNA community immediately began corrective action. During implementation of corrective measures, minor discrepancies were discovered in additional data used exclusively by the Texas Department of Public Safety. All of the errors have been corrected and the changes have empirically demonstrated minimal impact on the calculations used to determine the significance of an association. **Further, the database corrections have no impact on the inclusion or exclusion of victims or defendants in any result.**

If requested in writing, the Texas DPS Crime Laboratory System will recalculate and report statistics previously reported in individual cases.

If you have any questions, please contact your local crime laboratory.

Brady W Mills
Deputy Assistant Director
Law Enforcement Support
Crime Laboratory Service



# KEN PAXTON
ATTORNEY GENERAL OF TEXAS

October 16, 2015

Bryce Benjet
INNOCENCE PROJECT
40 Worth Street, Suite 701
New York, New York 10013

      Re:    *Reed v. Thaler*, No. A-02-CA-142-LY
              *State v. Reed*, No. 8701

Dear Bryce:

      Enclosed is a notice regarding DNA testing from the Texas Forensic Science Commission.

                                 Regards,

                                 Matthew Ottoway
                                 Assistant Attorney General
                                 Assistant Criminal District Attorney/
                                 Bastrop County, Texas



TEXAS FORENSIC
SCIENCE COMMISSION
*Justice Through Science*

1700 North Congress Ave., Suite 445
Austin, Texas 78701

August 21, 2015

Members of the Texas Criminal Justice Community:

This letter provides notification to the community regarding an issue of potential concern to judges, criminal prosecutors, criminal defense lawyers, victims and defendants in the Texas criminal justice system. The concerns involve the interpretation of DNA results where multiple contributors may be present, commonly referred to as DNA mixture interpretation. The attached document details the origin and scope of the concerns.

While the Commission assesses the issues described in the attached document, we recommend any prosecutor, defendant or defense attorney with a currently pending case involving a DNA mixture in which the results could impact the conviction consider requesting confirmation that Combined Probability of Inclusion/Exclusion (referred to as "CPI" or "CPE") was calculated by the laboratory using current and proper mixture interpretation protocols. If the laboratory is unable to confirm the use of currently accepted protocols for the results provided, counsel should consider requesting a re-calculation of CPI/CPE.

The extent to which any closed criminal cases may require re-analysis will be a subject of Commission review and subsequent notification to the stakeholder community.

If you have any questions regarding these issues, please contact the Commission's general counsel, Lynn Garcia, at 512-936-0649 or lynn.garcia@fsc.texas.gov.

Sincerely,

Vincent J.M. Di Maio, MD
Presiding Officer

**Unintended Catalyst: the Effects of 1999 and 2001 FBI STR Population Data Corrections on an Evaluation of DNA Mixture Interpretation in Texas**

1. FBI Data Corrections: What Do They Mean?

In May 2015, the Federal Bureau of Investigation ("FBI") notified all CODIS laboratories it had identified minor discrepancies in its 1999 and 2001 STR Population Database. Laboratories across the country have used this database since 1999 to calculate DNA match statistics in criminal cases and other types of human identification. The FBI attributed the discrepancies to two main causes: (a) human error, typically due to manual data editing and recording; and (b) technological limitations (*e.g.*, insufficient resolution for distinguishing microvariants using polyacrylamide gel electrophoresis), both of which were known limitations of the technology. The FBI has provided corrected allele frequency data to all CODIS laboratories.

In May and June 2015, Texas laboratories notified stakeholders (including prosecutors, the criminal defense bar and the Texas Forensic Science Commission) that the FBI allele frequency data discrepancies were corrected. The immediate and obvious question for the criminal justice community was whether these discrepancies could have impacted the outcome of any criminal cases. The widely accepted consensus among forensic DNA experts is the database corrections have *no impact* on the threshold question of whether a victim or defendant was *included or excluded* in any result. The next questions were whether and to what extent the probabilities associated with any particular inclusion changed because of the database errors.

The FBI conducted empirical testing to assess the statistical impact of the corrected data. This testing concluded the difference between profile probabilities using the original data and the corrected data is less than a two-fold difference in a full and partial profile. Testing performed by Texas laboratories also supports the conclusion the difference is less than two-fold. For example, in an assessment performed by one Texas laboratory, the maximum factor was determined to be 1.2 fold. In other words, after recalculating cases using the amended data, the case with the *most substantially affected* Combined Probability of Inclusion/Exclusion ("CPI")[1] statistical calculation (evaluated for a mixed sample) changed from a 1 in 260,900,000 expression of probability to a 1 in 225,300,000 expression of probability.

Amended allele frequency tables are publicly available for anyone to compare the calculations made using the previously published data and the amended allele frequencies, though expert assistance may be required to ensure effective use of the tables.[2]

2. The Impact of FBI Database Errors on DNA Mixture Interpretation Using CPI

As part of their ongoing commitment to accuracy, integrity and transparency, many Texas laboratories offered to issue amended reports to any stakeholder requesting a report using the corrected FBI allele frequency data. Some prosecutors have submitted such requests to laboratories, particularly for pending criminal cases. As expected, the FBI corrected data have not had an impact exceeding the

---

[1] The Combined Probability of Inclusion/Exclusion is commonly referred to as either "CPI" or "CPE." They are referred to jointly in this document as "CPI" for ease of reference.

[2] https://www.fbi.gov/about-us/lab/biometric-analysis/codis/amended-fbi-str-final-6-16-15.pdf

two-fold difference discussed above. However, because analysts must issue *signed amended reports* with the new corrected data, they may only issue such reports if they believe *the analyses and conclusions in the report comply with laboratory standard operating procedures*. For cases involving DNA mixtures, many laboratories have changed their interpretation protocols and related procedures using CPI. To reiterate, changes in mixture interpretation protocols are <u>unrelated</u> to the FBI allele frequency data corrections discussed above. However, when issuing new reports requested because of the FBI data corrections, the laboratory's use of current mixture protocols may lead to different results if the laboratory had a different protocol in place when the report was originally issued. Changes in mixture interpretation have occurred primarily over the last 5-10 years and were prompted by several factors, including but not limited to mixture interpretation guidance issued in 2010 by the Scientific Working Group on DNA Analysis ("SWGDAM").

The forensic DNA community has been aware of substantial variance in mixture interpretation among laboratories since at least 2005 when the National Institute of Standards and Technology ("NIST") first described the issue in an international study called MIX05. Though NIST did not expressly flag which interpretation approaches were considered scientifically acceptable and which were not as a result of the study, it has made significant efforts to improve the integrity and reliability of DNA mixture interpretation through various national training initiatives. These efforts have ultimately worked their way into revised standard operating procedures at laboratories, including laboratories in Texas. Based on the MIX05 study, we know there is variation among laboratories in Texas and nationwide, including differences in standards for calculation of CPI that could be considered scientifically acceptable. However, we also know based on a recent audit of the Department of Forensic Sciences ("DFS") in Washington, DC that some of the "variation" simply does not fall within the range of scientifically acceptable interpretation. This finding does not mean laboratories or individual analysts did anything wrong intentionally or even knew the approaches fell outside the bounds of scientific acceptability, but rather the community has progressed over time in its ability to understand and implement this complex area of DNA interpretation appropriately.

While in many cases the changed protocols may have no effect, it is also possible changes to results may be considered material by the criminal justice system, either in terms of revisions to the population statistics associated with the case or to the determination of inclusion, exclusion or an inconclusive result. The potential range of interpretive issues has yet to be assessed, but the potential impact on criminal cases raises concerns for both scientists and lawyers. We therefore recommend any prosecutor, defendant or defense attorney with a currently pending case involving a DNA mixture in which the results could impact the conviction consider requesting confirmation that CPI was calculated by the laboratory using current and proper mixture interpretation protocols. If the laboratory is unable to confirm the use of currently accepted protocols for the results provided, counsel should consider requesting a re-analysis of CPI.

The Texas Forensic Science Commission is currently in the process of assembling a panel of experts and criminal justice stakeholders to determine what *guidance and support* may be provided to assist Texas laboratories in addressing the challenging area of DNA mixture interpretation. In particular, a distinction must be made between acceptable variance in laboratory interpretation policies and protocols and those approaches that do not meet scientifically acceptable standards. An emphasis on statewide collaboration and stakeholder involvement will be critical if Texas is to continue to lead the nation in tackling challenging forensic problems such as those inherent in DNA mixture interpretation.

2

# EXHIBIT 2

Barry C. Scheck, Esq.
Peter J. Neufeld, Esq.
Directors

Maddy deLone, Esq.
Executive Director

Innocence Project
40 Worth Street, Suite 701
New York, NY 10013


Tel 212.364.5340
Fax 212.364.5341
www.innocenceproject.org

November 18, 2015

Brady W. Mills
Deputy Assistant Director
Texas Department of Public Safety
5805 N. Lamar Blvd.
Box 4087
Austin, Texas 78773

      Re:    Rodney Reed v. State of Texas No. 8701

Dear Mr. Mills:

I represent Rodney Reed, who was convicted of capital murder in Bastrop County, Texas and was sentenced to death for the April 1996 murder of Stacey Stites. The Texas Department of Public Safety (DPS) crime lab conducted DNA testing on numerous items of evidence both before Mr. Reed's 1998 trial and during post-conviction proceedings. I recently received notification both from you and from the Texas Forensic Science Commission that the DPS Crime Lab raised questions regarding the accuracy of the lab's interpretation of DNA results. The notices are attached to this letter as Exhibits A and B.

In your letter dated June 30, 2015, you state that errors in the FBI population databases as well as errors in DPS data may have resulted in inaccurate reports regarding the statistical significance of DNA results. However, you assured that "the database corrections have no impact on the inclusion or exclusion" reported. See Exhibit A.

On August 21, 2015, the Texas Forensic Science Commission issued an advisory informing members of the criminal justice community that laboratories in Texas have revised their mixture interpretation protocols, which may also affect the results reported by the DPS Crime Lab. Specifically, the Forensic Science Commission stated that these revised mixture interpretation protocols could lead to materially different results:

> . . . it is also possible changes to results may be considered material by the criminal justice system, either in terms of revisions to the population statistics associated with a case *or to the determination of inclusion, exclusion or an inconclusive result.*

Benjamin N. Cardozo School of Law, Yeshiva University



Exhibit B (emphasis added). This advisory was recently forwarded to me by the Office of the Attorney General.

Based on these recent notices that material errors may have been made in the DPS Crime Lab's interpretation of its DNA test results and your June 30, 2015 offer to re-examine the work done by the DPS Crime Lab, I am writing to formally request that the DPS Crime Lab review the work done in Mr. Reed's case and correct any errors that the DPS Crime Lab discovers. This re-examination should include both the database statistics issue discussed in your June 30, 2015 letter as well as the issues discussed in the August 21, 2015 advisory by the Texas Forensic Science Commission.

In addition to any revised conclusions reported in this re-examination, please provide the following information so that I can fully evaluate the original work done on the case as well as the re-examination:

- A description of all types of results (including conclusions regarding inclusion, exclusion, or inconclusive data as well as statistical calculations) that the DPS believes need to be re-examined in light of the June 30, 2015 letter from DPS and the August 21, 2015 advisory from the Forensic Science Commission.

- The entire case file, including all reports, electronic data, bench notes, photographs, or other documents relating to any DNA testing and analysis in this case.

- Standard Operating Procedures ("SOP"; also called lab manuals, protocols, or guidelines) in effect at the time of the DNA testing and analysis originally performed and reported by DPS in this case;

  o All validation studies underlying the detection and interpretation guidelines utilized in the DNA testing performed in this case. Citations of publicly available materials will suffice.

- SOPs in effect at the time of any re-examination of the DNA testing and analysis and interpretation performed by DPS in this case.

  o All validation studies underlying the detection and interpretation guidelines utilized in the re-examination of DNA testing performed in this case. Citations of publicly available materials will suffice.

- An explanation of any changes in the applicable SOPs or other protocols relating to any re-examination of the DNA testing and analysis in this case including the reason that DPS changed the SOPs or other protocols. Citations of publicly available materials will suffice.



- A full description of any changed opinions resulting from the re-examination.

  o This should include an explanation for why the opinion was changed, including an identification of what provisions of the SOPs or other documents resulted in the changed opinion.

Please do not hesitate to contact me if you have any questions regarding this request, and let me know if there is anything I can do to facilitate your work on this matter.

Best regards,

Bryce Benjet
Staff Attorney

CC:    Bryan Goertz, Bastrop County District Attorney
       Matthew Ottoway, Assistant Attorney General

# EXHIBIT A



## KEN PAXTON
ATTORNEY GENERAL OF TEXAS

July 22, 2015

Bryce Benjet
INNOCENCE PROJECT
40 Worth Street, Suite 701
New York, New York 10013

     Re:   *State v. Reed*, No. 8701

Dear Bryce:

     Enclosed is a notice regarding DNA testing from the Texas Department of Public Safety.

                    Regards,

                    Matthew Ottoway
                    Assistant Attorney General
                    Assistant District Attorney
                    Bastrop County, Texas

# TEXAS DEPARTMENT OF PUBLIC SAFETY

**5805 N LAMAR BLVD • BOX 4087 • AUSTIN, TEXAS 78773-0001**
**512/424-2000**
www.dps.texas.gov



STEVEN C. McCRAW
DIRECTOR
DAVID G. BAKER
ROBERT J. BODISCH, SR.
DEPUTY DIRECTORS

COMMISSION
A. CYNTHIA LEON, CHAIR
MANNY FLORES
FAITH JOHNSON
STEVEN P. MACH
RANDY WATSON

June 30, 2015

The Texas Department of Public Safety Crime Laboratory system was informed by the Federal Bureau of Investigation in May 2015 of errors in the FBI-developed population database. This database has been used by the Texas DPS Crime Laboratory system as well as many other crime laboratories across the country for calculating match statistics in criminal investigations and other types of human identification applications since 1999.

Upon notification, the forensic DNA community immediately began corrective action. During implementation of corrective measures, minor discrepancies were discovered in additional data used exclusively by the Texas Department of Public Safety. All of the errors have been corrected and the changes have empirically demonstrated minimal impact on the calculations used to determine the significance of an association. **Further, the database corrections have no impact on the inclusion or exclusion of victims or defendants in any result.**

If requested in writing, the Texas DPS Crime Laboratory System will recalculate and report statistics previously reported in individual cases.

If you have any questions, please contact your local crime laboratory.

Brady W Mills
Deputy Assistant Director
Law Enforcement Support
Crime Laboratory Service

# EXHIBIT B



# KEN PAXTON
ATTORNEY GENERAL OF TEXAS

October 16, 2015

Bryce Benjet
INNOCENCE PROJECT
40 Worth Street, Suite 701
New York, New York 10013

  Re: *Reed v. Thaler*, No. A-02-CA-142-LY
    *State v. Reed*, No. 8701

Dear Bryce:

  Enclosed is a notice regarding DNA testing from the Texas Forensic Science Commission.

        Regards,

        Matthew Ottoway
        Assistant Attorney General
        Assistant Criminal District Attorney/
        Bastrop County, Texas



## TEXAS FORENSIC SCIENCE COMMISSION
*Justice Through Science*

1700 North Congress Ave., Suite 445
Austin, Texas 78701

August 21, 2015

Members of the Texas Criminal Justice Community:

This letter provides notification to the community regarding an issue of potential concern to judges, criminal prosecutors, criminal defense lawyers, victims and defendants in the Texas criminal justice system. The concerns involve the interpretation of DNA results where multiple contributors may be present, commonly referred to as DNA mixture interpretation. The attached document details the origin and scope of the concerns.

While the Commission assesses the issues described in the attached document, we recommend any prosecutor, defendant or defense attorney with a currently pending case involving a DNA mixture in which the results could impact the conviction consider requesting confirmation that Combined Probability of Inclusion/Exclusion (referred to as "CPI" or "CPE") was calculated by the laboratory using current and proper mixture interpretation protocols. If the laboratory is unable to confirm the use of currently accepted protocols for the results provided, counsel should consider requesting a re-calculation of CPI/CPE.

The extent to which any closed criminal cases may require re-analysis will be a subject of Commission review and subsequent notification to the stakeholder community.

If you have any questions regarding these issues, please contact the Commission's general counsel, Lynn Garcia, at 512-936-0649 or lynn.garcia@fsc.texas.gov.

Sincerely,

Vincent J.M. Di Maio, MD
Presiding Officer

**Unintended Catalyst: the Effects of 1999 and 2001 FBI STR Population Data Corrections on an Evaluation of DNA Mixture Interpretation in Texas**

1. FBI Data Corrections: What Do They Mean?

In May 2015, the Federal Bureau of Investigation ("FBI") notified all CODIS laboratories it had identified minor discrepancies in its 1999 and 2001 STR Population Database. Laboratories across the country have used this database since 1999 to calculate DNA match statistics in criminal cases and other types of human identification. The FBI attributed the discrepancies to two main causes: (a) human error, typically due to manual data editing and recording; and (b) technological limitations (*e.g.,* insufficient resolution for distinguishing microvariants using polyacrylamide gel electrophoresis), both of which were known limitations of the technology. The FBI has provided corrected allele frequency data to all CODIS laboratories.

In May and June 2015, Texas laboratories notified stakeholders (including prosecutors, the criminal defense bar and the Texas Forensic Science Commission) that the FBI allele frequency data discrepancies were corrected. The immediate and obvious question for the criminal justice community was whether these discrepancies could have impacted the outcome of any criminal cases. The widely accepted consensus among forensic DNA experts is the database corrections have *no impact* on the threshold question of whether a victim or defendant was *included or excluded* in any result. The next questions were whether and to what extent the probabilities associated with any particular inclusion changed because of the database errors.

The FBI conducted empirical testing to assess the statistical impact of the corrected data. This testing concluded the difference between profile probabilities using the original data and the corrected data is less than a two-fold difference in a full and partial profile. Testing performed by Texas laboratories also supports the conclusion the difference is less than two-fold. For example, in an assessment performed by one Texas laboratory, the maximum factor was determined to be 1.2 fold. In other words, after recalculating cases using the amended data, the case with the *most substantially affected* Combined Probability of Inclusion/Exclusion ("CPI")[1] statistical calculation (evaluated for a mixed sample) changed from a 1 in 260,900,000 expression of probability to a 1 in 225,300,000 expression of probability.

Amended allele frequency tables are publicly available for anyone to compare the calculations made using the previously published data and the amended allele frequencies, though expert assistance may be required to ensure effective use of the tables.[2]

2. The Impact of FBI Database Errors on DNA Mixture Interpretation Using CPI

As part of their ongoing commitment to accuracy, integrity and transparency, many Texas laboratories offered to issue amended reports to any stakeholder requesting a report using the corrected FBI allele frequency data. Some prosecutors have submitted such requests to laboratories, particularly for pending criminal cases. As expected, the FBI corrected data have not had an impact exceeding the

---

[1] The Combined Probability of Inclusion/Exclusion is commonly referred to as either "CPI" or "CPE." They are referred to jointly in this document as "CPI" for ease of reference.

[2] https://www.fbi.gov/about-us/lab/biometric-analysis/codis/amended-fbi-str-final-6-16-15.pdf

two-fold difference discussed above. However, because analysts must issue *signed amended reports* with the new corrected data, they may only issue such reports if they believe *the analyses and conclusions in the report comply with laboratory standard operating procedures*. For cases involving DNA mixtures, many laboratories have changed their interpretation protocols and related procedures using CPI. To reiterate, changes in mixture interpretation protocols are <u>unrelated</u> to the FBI allele frequency data corrections discussed above. However, when issuing new reports requested because of the FBI data corrections, the laboratory's use of current mixture protocols may lead to different results if the laboratory had a different protocol in place when the report was originally issued. Changes in mixture interpretation have occurred primarily over the last 5-10 years and were prompted by several factors, including but not limited to mixture interpretation guidance issued in 2010 by the Scientific Working Group on DNA Analysis ("SWGDAM").

The forensic DNA community has been aware of substantial variance in mixture interpretation among laboratories since at least 2005 when the National Institute of Standards and Technology ("NIST") first described the issue in an international study called MIX05. Though NIST did not expressly flag which interpretation approaches were considered scientifically acceptable and which were not as a result of the study, it has made significant efforts to improve the integrity and reliability of DNA mixture interpretation through various national training initiatives. These efforts have ultimately worked their way into revised standard operating procedures at laboratories, including laboratories in Texas. Based on the MIX05 study, we know there is variation among laboratories in Texas and nationwide, including differences in standards for calculation of CPI that could be considered scientifically acceptable. However, we also know based on a recent audit of the Department of Forensic Sciences ("DFS") in Washington, DC that some of the "variation" simply does not fall within the range of scientifically acceptable interpretation. This finding does not mean laboratories or individual analysts did anything wrong intentionally or even knew the approaches fell outside the bounds of scientific acceptability, but rather the community has progressed over time in its ability to understand and implement this complex area of DNA interpretation appropriately.

While in many cases the changed protocols may have no effect, it is also possible changes to results may be considered material by the criminal justice system, either in terms of revisions to the population statistics associated with the case or to the determination of inclusion, exclusion or an inconclusive result. The potential range of interpretive issues has yet to be assessed, but the potential impact on criminal cases raises concerns for both scientists and lawyers. We therefore recommend any prosecutor, defendant or defense attorney with a currently pending case involving a DNA mixture in which the results could impact the conviction consider requesting confirmation that CPI was calculated by the laboratory using current and proper mixture interpretation protocols. If the laboratory is unable to confirm the use of currently accepted protocols for the results provided, counsel should consider requesting a re-analysis of CPI.

The Texas Forensic Science Commission is currently in the process of assembling a panel of experts and criminal justice stakeholders to determine what *guidance and support* may be provided to assist Texas laboratories in addressing the challenging area of DNA mixture interpretation. In particular, a distinction must be made between acceptable variance in laboratory interpretation policies and protocols and those approaches that do not meet scientifically acceptable standards. An emphasis on statewide collaboration and stakeholder involvement will be critical if Texas is to continue to lead the nation in tackling challenging forensic problems such as those inherent in DNA mixture interpretation.

2